JONES *v.* FOREHAND.

1. In an action for defamatory words, a plea of privileged communication may be joined with a plea of the general issue, and the speaking of the words need not be expressly admitted but may be put hypothetically. In this case the plea was sufficient.
2. Where an occasion is pleaded as privileged, all facts calculated to throw light upon the true character of the occasion are admissible in evidence.
3. It is not competent for the defendant to testify that the communication was privileged and confidential.
4. Where the business of an agent or an arbitrator was to appraise property and ascertain the state of accounts between landlord and tenant, a communication by the landlord to such agent or arbitrator at the time of requesting him to render his services, to the effect that the tenant had already stolen two bales of cotton and he, the landlord, wished to get him off the premises before he stole any more, it not appearing that the accounts between the parties embraced the two bales of cotton, or any part of their value or any question concerning them, was irrelevant to the business in hand, and was therefore not a privileged communication.
   March 26, 1892. Argued at the last term.

Slander. Pleading. Evidence. Landlord and tenant. Before Judge FORT. Macon superior court. May term, 1891.

Reported in the decision.

W. H. KIMBROUGH, HINTON & CUTTS and R. F. LYON, for plaintiff.

J. W. HAYGOOD, J. M. DuPREE and HINES, SHUBRICK & FELDER, for defendant.

SIMMONS, Justice.

An action for words was brought by Jones against Forehand, his declaration alleging that in November, 1886, the defendant falsely and maliciously spoke to J. J. Turner thus: "I want you to go down to the Drumright place and arbitrate the matter between Jones (the plaintiff) and myself. I want to settle up with him. He has already stolen two bales of cotton from me, and I want to get him off before he steals any more

cotton from me." The defendant pleaded not guilty, mitigation, and privileged communication. The jury found for the defendant on the plea of privileged communication. A new trial was denied, and the defendant excepted.

1. It is assigned as error that the court overruled the plaintiff's demurrer to the plea on which the verdict is based. The demurrer was upon the following grounds: (1) that said plea did not set up any sufficient defence to the plaintiff's action; (2) that the plea did not show or admit that the defendant had made use of the words in the plaintiff's declaration alleged, it appearing from the pleadings that the plea of general issue was then and there in and had not been stricken or withdrawn; (3) that the plea did not show that the words alleged to have been spoken were of such a character or were spoken under such circumstances as would make them a privileged communication; and (4) that the law in regard to the action for words did not contemplate the use of slanderous words as being privileged under any circumstances whatever, but that slanderous words *per se* could in no case be a privileged communication.

It is also complained that the court erred in charging the jury in regard to this plea, as follows : " These three pleas (the general issue, mitigation, and privileged communications in bar of right of action) he (the defendant) is authorized by law to file, whether they appear to be contradictory or not. It is the right of a party sued to file as many and as contradictory pleas as he sees proper." This is assigned as error because no plea can be filed or sustained, so long as the general issue remains, that does not admit *in hæc verba* the words spoken as alleged in the declaration.

Where a defendant pleads, in addition to the general issue, that he was authorized by law to do the act complained of, he may be required at the trial to elect

upon which defence he will rely, for the code declares that by the latter of these pleas " he admits the act to be done " (§3051); and of course he cannot admit the act and at the same time require proof of it by insisting upon a plea by which the act is denied. But while this inconsistency may prevent the consideration of both pleas, it does not prevent the filing of both. The right to file them together, notwithstanding such inconsistency, is clear, under the code, §3453. *Rigden* v. *Jordan & Stewart*, 81 *Ga.* 671. Their inconsistency, therefore, was no ground for striking either one of them on demurrer. While the plaintiff had a right to require the elimination of one or the other of these defences, he did not avail himself of this right in the proper manner. If he objected to the consideration of both of them, it was his right to insist that the defendant should elect between them, and that the plea of privilege, if relied upon, should be treated as an admission that the words were spoken, and as dispensing, therefore, with proof of that fact. That the speaking of the words was admitted by this plea hypothetically, and not expressly, was not a good objection. Under our system of pleading, hypothetical averments in defensive pleadings have been held allowable (*Urquhart* v. *Powell*, 54 *Ga.* 29); and besides, under section 3051, *supra*, the plea of privilege, if relied upon, is tantamount to an express admission that the words were spoken. If the defendant is compelled to elect, and he elects to rely upon this plea, the effect is the same, whether the words are admitted expressly or not.

Nor is the plea insufficient on the ground that it fails to show that the words were spoken under such circumstances as would make them a privileged communication. After stating the terms of a contract under which the title to cotton cultivated by the plaintiff was to remain in the defendant as landlord until the former's

indebtedness to him should be paid, the plea alleges, in substance, that a dispute arose between them "as to plaintiff's disposing of the two bales of cotton on which defendant had a landlord's lien," and " as to the amounts that plaintiff, both as tenant and cropper, was indebted to defendant, and the quantity of the crops still unsold and on the land cultivated by plaintiff as tenant and as cropper"; and that to settle and adjust this dispute, they agreed that each should select a man to represent himself, and the defendant selected Turner; and in informing Turner of the purpose for which he had been chosen, "endeavored to put him, as his confidential friend who was so to represent him, into possession of all the facts and circumstances in and attending the subject-matters of dispute and contention between plaintiff and defendant; and that this is the occasion upon which plaintiff alleges the defendant spoke the words set forth in his declaration. : . Defendant says that this conversation with Turner was private and confidential, and that all he said to Turner about said matters of difference and about plaintiff was said without malice towards plaintiff and with the *bona fide* intent on the part of defendant to protect his own interest in the subject-matters of dispute where it was very materially concerned. Wherefore defendant says that if he spoke the words alleged by plaintiff, and spoke them on the occasion and under the circumstances and surroundings as above set forth, and without malice towards plaintiff, they were privileged communications."

Our code (§2980) includes among privileged communications " statements made with the *bona fide* intent on the part of the speaker to protect his own interest in a matter where it is concerned." According to this plea, the alleged defamatory statement, if made, was made at a private and confidential interview between the defendant and a person selected to represent him in the settle-.

ment of a dispute with reference to the two bales of
cotton to which the statement related, and which in-
volved the plaintiff's conduct in disposing of this cotton,
and it was made with the *bona fide* intent on the part of
the defendant to protect his own interest in that matter.
The occasion therefore was privileged. Whether the
language and manner of the communication, in charac-
terizing the plaintiff's disposing of the cotton as stealing,
was so far in excess of what the occasion warranted as
to show malice on the part of the defendant, and therefore
deprive him of the protection afforded by the occasion,
was a question for the jury. A statement made upon
such an occasion, if pertinent to the matter in hand, is
*prima facie* protected; and this protection remains until
overcome by proof of express malice; and though the
language, if violent or excessive, may amount to proof
of express malice, it should be left to the jury to say
whether it amounts to such proof or not. Folkard's
Starkie on Slander and Libel, §325, \*282 *et seq.*; §577,
\*454.

The remaining ground of the demurrer, viz. that lan-
guage *per se* slanderous is in no case protected, was not
pressed in this court; and on this point the law is too
well settled to require discussion. From language *per se*
slanderous malice is inferred, but this inference is always
subject to be rebutted by proof of the occasion or other
circumstances of justification.

2. One of the grounds of the motion for a new trial
is, that the court permitted the defendant to testify that
the plaintiff was indebted to him in money and cotton,
as a "cropper," the plaintiff objecting that the same
was illegal and irrelevant. It is recited in this ground
that the court admitted the testimony as illustrating the
truth of the plea of privileged communications. Where
an occasion is pleaded as privileged, all facts calculated
to throw light upon the true character of the occasion

are admissible in evidence; and according to' this plea, the object of the settlement in which the two bales of cotton were involved, was to arrive at the plaintiff's indebtedness to the defendant.

3. Another ground of the motion is, that the court, over objection, permitted the defendant to testify that the communication alleged in the declaration was privileged. The admission of this testimony was clearly improper. A witness cannot be thus permitted to give his opinion as to the law of the case.

4. It is complained that the court instructed the jury as follows: "One may publish, by speech or writing, whatever he honestly believes is essential to the protection of his own rights, or to the rights of another, provided the publication is not unnecessarily made to others than to those persons whom he honestly believes can assist him in the protection of his own rights, nor to others than those whom he honestly believes will, by reason of a knowledge of the matter published, be better enabled to assert, or to protect from invasion, either their own rights or the rights of others entrusted to their guardianship." The error assigned is, that the charge was not qualified by stating that the communication, to become privileged, must be made about the subject-matter to which the person to whom made was to attend. We have examined the entire charge of the court as sent up in the record, and in no part of it is there any reference to this essential feature of a privileged communication—relevancy to the subject-matter on account of which the privilege is claimed. Under the charge, the privilege is made to depend merely upon the defendant's good faith and his *belief* in the relevancy of the statement, and not in any degree upon its actual relevancy. It is a well settled rule that " a communication, to be privileged, must be spoken with reference to the matter in hand. If the speaker goes further and makes a defamatory charge against a person—such

charge having nothing to do with the matter in hand,—it is not protected." Folkard's Starkie on Slander and Libel, §329, *285; §308, *269; Odgers, Libel and Slander, *245; Hageman, Priv. Comm. 189. Had the court instructed the jury to this effect, the verdict might have been different; certainly it ought to have been different under the evidence in the record. The verdict, as we have seen, was a special finding in favor of the plea of privileged communication; yet the allegations of the plea are wholly unsustained by the proof in so far as they tend to show the relevancy of the alleged slanderous statement. There is no evidence that the plaintiff's disposing of the two bales of cotton had anything to do with the matter in the settlement of which Turner was to represent the defendant. The defendant testified that his purpose in going to Turner was to get him to aid in arriving at a settlement between himself and Jones, but he does not explain what the settlement was about. Mr. Haygood, the attorney who represented him in the settlement, testified that the agreement was that the defendant and the plaintiff should each " select a man to go down upon the plantation and value the crop," and that the parties selected did this, and " there was nothing said in their report about the two bales of cotton." This accorded with the testimony of the two persons selected by the parties. Turner testified: " All that Lofley and I were to do was to go down to the place and estimate the amount of the crop and the value of it. We went down there and estimated the amount of the crop and the value of the same." Lofley testified: " All Mr. Turner and myself were to do was to go down to the Drumright place and estimate the amount of the cotton and corn there and value it; and then there were nine bales of cotton in Westbrook's warehouse in Montezuma, and we went there and valued that. They told us to value these nine bales of cotton which were in Turner & West-

brook's warehouse, and value the property which we found upon the Drumright place. We had an account there to show what Mr. Jones owed Mr. Forehand, with these items, this nine bales of cotton and this cotton. We were to take the account of Mr. Forehand against Mr. Jones and go and see how much crop was there, estimate and value it, and also value the nine bales of cotton in the warehouse. That is all we were to do." "Mr. Forehand, as I know of, did not make any claim before us for these two bales of cotton." "That two bales of cotton was not mentioned to us." The testimony above quoted covers substantially all the evidence on this point. It appears, therefore, that the matters to be settled by these parties did not embrace the two bales of cotton which the plaintiff was charged with having stolen, nor any part of their value, nor any question concerning them. It is clear then that the defendant failed to sustain his plea of privilege, and that the verdict is contrary to law and the evidence.

*Judgment reversed.*